[Civ. No. 368.   Third Appellate District.—August 26, 1907.]

GEORGE W. BUSH, Petitioner, v. A. B. NYE, as State Controller, and H. H. SCHUFFLETON, Jr., as Auditor of Shasta County, Respondents.

JUDGES—ADDITIONAL SUPERIOR JUDGE—PROVISIONAL TERM—VACANCY— END OF TERM OF PROVISIONAL APPOINTEE—FAILURE OF ELECTED JUDGE TO QUALIFY.—The legislature may provide for the election of an additional superior judge in any county, and the governor may appoint a judge to act provisionally until the election of the additional judge. If his first appointee refuses to accept or qualify, the governor may fill the vacancy in the provisional term, which ends absolutely with the beginning of the constitutional term of the elected judge. No provisional appointee can hold over on account of the failure of the elected judge to qualify.

PETITION for writ of mandate to the controller of state, and to the auditor of Shasta County.

The facts are stated in the opinion of the court.

Morrison, Cope & Brobeck, for Petitioner.

U. S. Webb, Attorney General, for Respondents.

HART, J.—This is a petition for a writ of mandate, addressed directly to this court, to compel the respondents to draw their warrants upon the treasuries of the state of California and the county of Shasta, respectively, in favor of the petitioner for such sum or sums as are alleged to be now due and payable to said petitioner for and on account of his salary as a judge of the superior court of the said county of Shasta.

The controversy arises out of the following facts: The legislature, on the twentieth day of March, 1905, passed and

the governor approved, an act entitled "An Act to Increase
the Number of Judges of the Superior Court of the County
of Shasta, State of California, and for the Appointment of
such Additional Judge." (Stats. 1905, p. 315.) By said
act the number of judges of the superior court in and for the
county of Shasta was increased from one to two. Thereafter, the Hon. Geo. C. Pardee, then the governor of the state
of California, under and by virtue of the powers conferred
upon him by the constitution and by the provisions of said
act of the legislature, duly appointed and commissioned one
Thomas B. Dozier to the said office of judge of the superior
court provided for by said act, but said Dozier "failed, neglected and refused, within the time prescribed by law or at
all to qualify for the said office," etc. Thereafter the governor appointed the Hon. Geo. W. Bush, the petitioner herein,
to said office, and said Bush thereupon duly qualified and entered upon the discharge of the duties of said office. The act
provides that the appointee of the governor should hold the
office and exercise its duties until the first Monday after the
first day of January, 1907, and that "at the next general
election to be held in November, A. D. 1906, one additional
judge of said Superior Court shall be elected in said county,
who shall be the successor to the judge appointed hereunder
to hold office for the term prescribed by the constitution and
by law." Accordingly, at the general state election held
on the sixth day of November, 1906, the voters of Shasta
county voted for and elected a successor to the petitioner for
the term of six years, to begin on and after the first Monday
after the first day of January, 1907. The petitioner and the
Hon. Chas. M. Head were rival candidates for the office at
said election, and the latter, having received the highest number of votes for the same, was declared elected thereto. It is
alleged in the petition that "the said Charles M. Head failed,
refused and neglected within the time prescribed by law or at
all to qualify to and for the office of Judge of the Superior
Court of Shasta County, to which he had been declared
elected." It is further stated "that on and after the first
Monday after the first day of January, 1907, the said Geo.
W. Bush was then and there the duly qualified and acting
Judge of said Superior Court, and did continue to perform
the duties of such office and to occupy the same in accordance
with the constitution and laws of the State of California."

A demurrer to the petition, based upon the grounds that said petition does not state facts sufficient to constitute a cause of action, was filed by the attorney general. The single question thus presented for determination is: Could the petitioner, under the circumstances exhibited by the allegations of the petition, legally continue to hold and exercise the duties of the office to which he had been appointed after the expiration of the term fixed by the act of the legislature and for which he was appointed and until his successor was elected and qualified? The solution of this question involves the construction and application of certain provisions of the constitution dealing with the term or terms of judges of the superior court.

Section 2 of the act creating an additional judge of the superior court in and for the county of Shasta reads as follows: "Within thirty days after the passage of this act, the governor shall appoint one additional judge of the Superior Court in the County of Shasta, State of California, who shall hold office until the first Monday after the first day of January, A. D. 1907. At the next general election to be held in November, A. D. 1906, one additional judge of said Superior Court shall be elected in said county who shall be the successor to the judge appointed hereunder to hold office for the term prescribed by the constitution and by law." (Stats. 1905, p. 316.)

So much of section 6 of article VI of the constitution as is pertinent to this inquiry reads as follows: ". . . The term of office of judges of the Superior Courts shall be six years from and after the first Monday of January next succeeding their election. .... If a vacancy occur in the office of judge of the Superior Court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term."

The contention of the petitioner is ·that, having been appointed by the governor to fill a vacancy in the office of judge of the superior court, he was entitled to hold such office until, in obedience to the commands of said section 6 of article VI of the constitution, his successor was elected and qualified. The failure of Judge Head, who it is alleged was elected as his successor at the next general state election after the vacancy occurred, and which was filled by appointment, to

qualify within the time prescribed by law brought about, it is urged, the contingency referred to by section 6 of article VI of the constitution upon which he was entitled to hold over and until his successor was elected and qualified. It is agreed that by and from the very meaning of the word "vacancy" itself the passage of the act providing the additional judge created, *ipso facto,* a vacancy in the office of such judge; but petitioner argues that a second vacancy occurred when Dozier, having been appointed by the governor to the office, refused or failed to qualify therefor. In other words, as we understand petitioner's argument, the provisions of the act authorizing the governor to appoint for the term fixed by the act, if valid at all, became, by the appointment of Dozier, *functus officio* and the power of the governor to appoint thereunder consequently null and void, and that the appointment of Bush by the executive thereafter could have been made by virtue of no other authority than that conferred by the constitution. It is further argued that so much of the act under consideration as attempted to fix a determinate term for the newly created office is unconstitutional, because the constitution itself has established all the various terms of a judge of a superior court. These several contentions by petitioner are plausibly and ably presented, but we think an examination of them will show them to be untenable. We are of the opinion that section 6 of article VI of the constitution has no application to the case under the facts discovered by the record. We are rather of the conviction that the whole question here is determinable by the provisions of section 9 of article VI of the constitution, and that the legislature, by the creation of an additional judge of the superior court of Shasta county, and prescribing the provisional term thereof, acted clearly within the power thus conferred upon it. It will not be denied that the legislature would exceed its power were it to attempt to interfere, by enlarging or diminishing, with the terms of judges of the superior court prescribed by section 6 of article VI of the constitution; but in the case at bar there was no such attempt by the legislature, nor does the term fixed by the act in any manner or degree trespass upon or interfere with the terms fixed by section 6 of said article. Section 9 of article VI reads: " . . . The legislature of the state may, at any time, two-thirds of the members of the senate and two-thirds of the members of the assembly vot-

ing therefor, increase or diminish the number of judges of the Superior Court in any county, or city and county, in the state." The power thus vested in the legislature by the constitution is necessarily accompanied by such other power, not inconsistent with other provisions of the organic law, as the legislature may deem essential to exercise in order to execute and enforce the power so expressly conferred. Therefore, it may arrange provisionally for the filling of the vacancy occurring in said office with the creation thereof until, if it be, as here, an elective office, the people shall have been afforded an opportunity under the law of filling it themselves by the election of someone to discharge its duties for and during the regular term thereof. As was said in *People* v. *Markham*, 104 Cal. 232, [37 Pac. 918] : "Whenever one of these new offices is created there is, of course, a necessity that it should be provisionally filled in some manner until the commencement of a regular constitutional term, and if the constitution is silent upon this point, the power of the legislature to make such provisional arrangement by statute cannot be questioned." In the case before us, the legislature, in making the "provisional arrangement" for filling the vacancy in the term of the additional judge, has seen fit to fix *that term* for a specified and determinate period, covering the entire time during which the term could run without impinging upon any terms established by the constitution and beyond which, under that instrument, it, of course, could not extend. In other words, the term was so prescribed by the act of the legislature as to terminate on the very day on which the constitutional term of six years would begin. It is thus readily to be seen that there is nothing in the provisions of the act as to the provisional term of the office which can by any possible construction be held to be in conflict with any of the provisions of section 6 of article VI of the constitution. The legislature having fixed a determinate period as constituting the provisional term of the office, said term, as we have seen, expiring coincidently with the beginning of the constitutional term, the appointment by the governor to fill the vacancy in *that term* was, necessarily, an appointment for the full term. The appointment could not be made to extend to a time when "his successor" was elected and qualified, because, under the provisions of the act, while the appointee held the office, there could be no vacancy in *that term* necessitating the election

and qualification of "his successor" to that term, and a vacancy could only be caused therein by his own death or resignation or retirement for any reason before the expiration of the provisional term fixed by the act. And it is our opinion that if such a vacancy had occurred, the appointment by the governor of his first appointee's successor would be only for the remainder of the unexpired provisional term. Our reason for expressing this view is because we are of the opinion, as before stated, that the provisions for filling a vacancy in the office of judge of the superior court found in section 6 of article VI of the constitution have no application to the provisional arrangement which it is competent for the legislature to make with reference to the filling of a newly created office of judge for the time intervening the time of the creation of said office and the time when, under the constitution, a regular term thereof is to begin. We think that that section of article VI has reference exclusively to vacancies occurring in the constitutional term of that office, and that this conclusion is sustained by reason of the fact that by the act of the creation of an additional judge of the superior court the legislature is controlled entirely by section 9 of article VI, *supra,* not only as to the creation of the office but also as to making "provisional arrangement" for filling the same *ad interim.* It follows from the views thus expressed that the proposition that the failure of Dozier to qualify after his appointment created a "second vacancy" in the provisional term fixed by the legislature is of no importance in the decision of the main question. But it may be well to say that we are not prepared to accept as sound law the contention that the mere appointment of Dozier amounted to the filling of the vacancy synchronously happening with the creation of the office and that his failure to qualify caused a second vacancy in the provisional term. The appointment of Dozier would rather appear to have been an ineffectual attempt of the executive to fill the vacancy occurring *ipso facto,* with the creation of the additional judge; that the governor could succeed in filling the vacancy in the term fixed by the act only when whosoever he might appoint *accepted* such office by *qualifying* within the time required by law. It would seem that, in order to fill the vacancy, two facts should exist concurrently at some time, to wit, the fact of *appointment* and the fact of *acceptance;*

or, as we would say in contracts, the minds of the executive and his appointee should meet before the vacancy could be filled; and it is obvious that, after the appointment, the act of actual acceptance could be manifested only by the fact of qualifying by the appointee. The act of acceptance did not occur in the case of Dozier, and the vacancy still remained, we think, the same "old vacancy." If a man is offered a chair in which to sit, but refuses and does not in fact sit in the chair, the latter, so far as that man is concerned, remains unoccupied and vacant. There can be discovered no distinction between the two propositions. Can it be truthfully said that Dozier, by the mere act of his appointment by the executive, is an ex-judge of the superior court of Shasta county? Under our laws, no man elected to the office of judge of the superior court is eligible to assume control and discharge the duties of that office until he has qualified as required by law. And if, after his appointment or election, he does not qualify and does not assume to discharge the duties of said office, as under such circumstances he would have no legal right to do, it could not be said that he had occupied the office by reason of the mere appointment any more correctly than it could be said that the man refusing to sit in the chair had occupied the chair.

Our conclusion is: 1. That it was competent for the legislature, under section 9 of article VI of the constitution, to fix the provisional term of the additional judge to cover a determinate period of time, so long as the term so fixed did not interfere with or trench upon the terms established by the constitution itself; that the legislature, in thus fixing such term, was entirely controlled by said section 9 of article VI of the constitution. 2. That the term so fixed by the act under review did not interfere with or trespass upon any terms fixed by the constitution itself. 3. That the provisional term fixed by the act, in analogy to the regular constitutional terms of judges of the superior courts, expired, *ex vi termini*, at the time to which it was limited, or with the beginning of the succeeding constitutional term. 4. That therefore, and of necessity, the term of the appointee of the governor ceased absolutely with the expiration of said provisional term.

For the foregoing reasons the demurrer will be sustained and the writ denied.

Chipman, P. J., and Burnett, J., concurred.